# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

**Chambers of**
**Douglas R. Miller**
**United States Magistrate Judge**

101 West Lombard Street
Baltimore, Maryland 21201
MDD_DRMChambers@mdd.uscourts.gov
(410) 962-7770

July 29, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:     *Nathan Y. v. Frank Bisignano, Commissioner, Social Security Administration*[1]
          Civil No. 24-3071-DRM

Dear Counsel:

On October 22, 2024, Plaintiff Nathan Y. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits.  ECF No. 1.  This case was then referred to me with the parties' consent.  *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023).  I have considered the record in this case (ECF No. 8) and the parties' briefs (ECF Nos. 11, 13, and 14).  I find that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2023).  The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, I will REVERSE the Commissioner's decision, and REMAND the case to the Commissioner for further consideration.  This letter explains why.

## I.     PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on August 10, 2021, alleging a disability onset of July 3, 2021.  Tr. 188-89.  Plaintiff's claims were denied initially and on reconsideration.  Tr. 103-07, 116-19.  On February 21, 2024, an Administrative Law Judge ("ALJ") held a hearing.  Tr. 59-85.  Following the hearing, on April 24, 2024, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame.  Tr. 7-23.  The Appeals Council denied Plaintiff's request for review, Tr. 1-3, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security on October 22, 2024.  ECF No. 1.  Frank Bisignano became the Commissioner of Social Security on May 7, 2025.  Accordingly, Commissioner Bisignano has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d).  *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

*Nathan Y. v. Bisignano*
Civil No. 24-3071-DRM
July 29, 2025
Page 2

## II.    THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).  The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.  "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'"  *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since July 3, 2021, the alleged onset date."  Tr. 12.  At step two, the ALJ found that Plaintiff suffered from the severe impairments of "post-traumatic stress disorder (PTSD); major depressive disorder; agoraphobia with panic attacks; gambling disorder in early remission; alcohol use disorder; and THC use disorder."  Tr. 13.  The ALJ also determined that Plaintiff suffered from the non-severe impairments of hypertension; hepatic steatosis; gallbladder polyp; obstructive sleep apnea; hyperlipidemia; obesity; low testosterone; and GERD.  Tr. 13.  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 13.  Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is capable of simple, routine and repetitive tasks.  He should have no interaction with the general public and only occasional interaction with co-workers and supervisors such that he is capable of working with things rather than with people.  The claimant is capable of no more than occasional changes in the work setting.

Tr. 15.  The ALJ determined that Plaintiff was unable to perform past relevant work as a correctional officer (DOT[3] #372.667-018) but could perform other jobs that existed in significant

---

[3] The "DOT" is the Dictionary of Occupational Titles.  "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* . . . , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations.  U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)."  *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

*Nathan Y. v. Bisignano*
Civil No. 24-3071-DRM
July 29, 2025
Page 3

numbers in the national economy.  Tr. 21-22.  Therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 23.

### III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards.  *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  It is "more than a mere scintilla . . . and somewhat less than a preponderance."  *Id.*  In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence.  *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.    ANALYSIS

Plaintiff raises one argument on appeal, specifically that the "ALJ's holding runs afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015) and its progeny."  ECF No. 11, at 7-14; ECF No. 14, at 2.  Defendant counters that substantial evidence supports the ALJ's finding that Plaintiff was able to perform simple, routine, and repetitive work.  ECF No. 13, at 5-13.

A claimant's RFC represents "the most [the claimant] can still do despite [the claimant's] limitations."  20 C.F.R. § 416.945(a).  In assessing RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'"  *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).  "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)."  *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)).  One of these four areas, CPP, concerns "the abilities to focus attention on activities and stay on task age-appropriately."  20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3).  A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair."  *Id.*

Nathan Y. v. Bisignano
Civil No. 24-3071-DRM
July 29, 2025
Page 4

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio*, 780 F.3d at 638; *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, an ALJ may accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017). Where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

The Court agrees with Plaintiff that an RFC restriction to "simple, routine and repetitive tasks" is inadequate. ECF No. 11, at 9-10. The ALJ determined that Plaintiff had a moderate CPP limitation, and apparently accommodated for it by limiting Plaintiff to "simple, routine and repetitive tasks" in the RFC. Tr. 14-15. *Mascio* unambiguously holds that "an ALJ does not account for a claimant's limitations in [CPP] by restricting the hypothetical question to simple, routine tasks or unskilled work." 780 F.3d at 638 (quoting *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)); *McDonald v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-3041, 2017 WL 3037554, at *4 (D. Md. July 18, 2017) (holding that an RFC limiting a claimant to "simple, routine, and repetitive tasks" did not adequately account for the ability to sustain work throughout an eight-hour day where the claimant had moderate CPP limitations). "In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task," stating that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." *Talmo v. Comm'r, Soc. Sec. Admin.*, No. ELH-14-2214, 2015 WL 2395108, at *2 (D. Md. May 19, 2015), *R. & R. adopted* (June 5, 2015) (citing *Mascio*, 780 F.3d at 638). Here, the ALJ contravened *Mascio* when they presented the hypothetical question to the vocational expert that the "individual is capable of simple routine and repetitive tasks." Tr. 81.

To be sure, the ALJ relied on evidence in crafting the RFC assessment's CPP-related provision. *See* Tr. 15-19. However, the ALJ did not "sufficiently explain[] why the mental limitation to simple, routine, and repetitive tasks account[s] for" Plaintiff's moderate CPP limitations. *Shinaberry*, 952 F.3d at 121. Instead, the ALJ went "straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311. This practice deprives the Court of the "logical explanation" necessary to conducting "meaningful appellate review." *Id.* at 312. These gaps in the ALJ's analysis frustrate meaningful review and warrant remand. *See Mascio*, 780 F.3d at 636-37 (finding the ALJ's lack of reasoning constituted reversible—rather than harmless—error because the Court was "left to guess about how the ALJ arrived at [their] conclusions"); *see also Thomas v. Comm'r, Soc. Sec. Admin.*, No. SAG-16-1229, 2017 WL 1193990, *2 (D. Md. Mar. 29, 2017) (remanding when the ALJ's discussion was "simply insufficient" regarding the plaintiff's "ability to work consistently over an eight-hour workday.").

Moreover, the Court notes that the ALJ did not rectify their error when they assigned persuasive value to the opinion of Dr. Knotts and the opinions of the State agency psychological consultants in April 2022 and July 2023 due to material inconsistencies that the ALJ failed to resolve. Tr.19-20; *cf. Sizemore*, 878 F.3d at 80-81 (affirming an ALJ's decision "that provided substantial support" when: (1) the ALJ adopted, without explanation, certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned persuasive value to the opinion).

The ALJ found "generally persuasive" Dr. Knotts' opinion that Plaintiff "be limited to simple, routine tasks." Tr. 19. However, Dr. Knotts also opined that Plaintiff's "[m]ood symptoms and concentration problems may interfere with his ability to initiate tasks, sustain tasks over time, or complete complex tasks." Tr. 372. While the ALJ appears to acknowledge these findings by Dr. Knotts, *see* Tr. 19, it is unclear how the ALJ found that Plaintiff could perform work at a consistent pace throughout the workday despite Dr. Knotts' limitations.

Further, the ALJ found the April 2022 and July 2023 opinions of the State agency psychological consultants, opining that Plaintiff "was able to sustain the mental demands associated with carrying out simple tasks over the course of a routine workday/workweek within acceptable attention, persistence, and pace tolerances," to be "mostly persuasive." Tr. 20; *see* 88-90, 97-99. However, the consultants also opined that Plaintiff was moderately limited in his "ability to maintain attention and concentration for extended periods" and in his "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." *See* Tr. 90, 99. Again, it is unclear how the ALJ found that Plaintiff could perform work at a consistent pace throughout the workday despite the consultants' limitations.

Pursuant to SSR 96-8p, an ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. "If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." *Id.* The ALJ's failure to resolve these conflicts between the medical opinion limitations as to Plaintiff's ability to perform simple tasks with Plaintiff's apparent inability to perform tasks at a consistent pace, compounded by the lack of explanation regarding Plaintiff's moderate CPP limitation, impedes meaningful review and warrants remand for further analysis. *Mascio*, 780 F.3d at 636-38.

As a final matter, the Court finds that the RFC's limitations to "no interaction with the general public and only occasional interaction with co-workers and supervisors such that he is capable of working with things rather than with people" and that Plaintiff "is capable of no more than occasional changes in the work setting" fail to accommodate Plaintiff's moderate CPP limitation. *See* Tr. 15. These limitations appear to accommodate Plaintiff's moderate limitations in interacting with others and adapting or managing oneself, rather than his moderate CPP limitation. *See* Tr. 14; *see Henry v. Berryhill*, No. BPG-17-0057, 2018 WL 558839, at *3 (D. Md. Jan. 25, 2018) (remanding when the ALJ's decision only contained a limitation for the Plaintiff's

*Nathan Y. v. Bisignano*
Civil No. 24-3071-DRM
July 29, 2025
Page 6

moderate social functioning but not for Plaintiff's moderate CPP limitation when the ALJ limited Plaintiff to simple, routine, repetitive work with few to non-workplace changes).

Although there is no per se rule requiring remand when an ALJ fails to analyze a function, remand is appropriate when an ALJ fails to evaluate a "relevant" function. *Dowling v. Comm'r of Soc. Sec. Admin*, 986 F.3d 377, 388-89 (4th Cir. 2021). Here, the ALJ's finding that Plaintiff has a moderate CPP limitation triggered a duty to either address the CPP in the RFC assessment or explain why doing so is unnecessary. *Mascio*, 780 F.3d at 638. Given the relevance of CPP to Plaintiff's case, the ALJ's failure to explain how the evidence supports the RFC assessment's CPP related provision is an error that warrants remand. *See Dowling*, 986 F.3d at 389.

On remand, the ALJ must either: (1) explain how the RFC addresses Plaintiff's moderate CPP limitations or (2) explain why no RFC limitation is necessary to address these limitations. *See Mascio*, 780 F.3d at 638. In remanding for further explanation, the Court expresses no opinion as to whether the ALJ's conclusion that Plaintiff is not entitled to benefits is correct.

## V.    <u>CONCLUSION</u>

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.


Sincerely,

/s/

Douglas R. Miller
United States Magistrate Judge